Bruce W. ANDERSON, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

Civ. A. No. 88–399.

United States District Court,
E.D. Kentucky,
at Pikeville.

Sept. 18, 1989.

John Doug Hayes, Pikeville, Ky., for plaintiff.

John S. Osborn, III, Lexington, Ky., for defendant.

## MEMORANDUM OPINION

UNTHANK, Senior District Judge.

### INTRODUCTION

Bruce Anderson brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income. It is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. *See* 20 CFR 404.[1520]520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. *See* 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)—i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. *See* 20 CFR 404.1520(c), 404.1521, 416.920(c), 416.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. *See* 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equalling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. *See* 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.-926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. *See* 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work—i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. *See* 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

*Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

 In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Secretary's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Secretary em-

ployed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. *Id.* This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Id.*

■ One of the critical factors in the agency decision is the selection of a particular disability onset date. The Court must determine not whether the record could arguably support a different onset date than that which the Secretary selected, but whether there is substantial evidence to support the date selected. *Willibanks v. Secretary of Health and Human Services,* 847 F.2d 301 (6th Cir.1988).

Additional information regarding the specific steps of the seven-part *Garner* test cited earlier is also valuable.

■ In step three of the analysis, the issue is whether the plaintiff has a "severe impairment", defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. *Farris v. Secretary of Health and Human Services,* 773 F.2d 85 (6th Cir.1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Secretary to determine that there is such a "severe impairment," *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211 (6th Cir.1986).

■ Step six refers to the ability to return to one's past relevant category of work. *Studaway v. Secretary,* 815 F.2d 1074 (6th Cir.1987). The plaintiff is said to make out a *prima facie* case by proving that she or he is unable to return to this work. *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1053 (6th Cir.1983).

■ Once the case is made, however, if the Secretary has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. *E.g., Richardson v. Heckler,* 735 F.2d 962, 964 (6th Cir. 1984). One of the ways that the Secretary may meet his burden is through the use of the medical-vocational guidelines.

■ However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Secretary may use the rules as a framework for decision-making. 20 CFR Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. *Damron v. Secretary,* 778 F.2d 279 (6th Cir.1985). Nonetheless, the finding by the Secretary that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. *Wages v. Secretary of Health and Human Services,* 755 F.2d 495 (6th Cir.1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. §§ 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. §§ 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles

and an occasional amount of walking and standing. 20 C.F.R. §§ 404.1567(a), 416.-967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

█ Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." *Varley v. Secretary of Health and Human Services*, 820 F.2d 777 (6th Cir.1987).

## DISCUSSION

█ Bruce Anderson filed for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI) on August 12, 1988 alleging disability since March 3, 1981.[1] The claimant was denied initially and he then pursued administrative remedies. An Administrative Law Judge, hereinafter the ALJ, found Anderson to have been disabled as of March 3, 1988 in a decision issued April 25, 1988. (Tr. 14). This decision entitled the claimant to receive SSI from March onward. However, since his DIB insured status expired on December 31, 1986, the claimant was found completely ineligible to receive DIB. This decision became final for the administration when the Appeals Council found no basis for a review of the decision on September 23, 1988. Anderson then filed suit in federal district court and the case is now ripe for decision upon cross-motions for summary judgment.

█ The ALJ concluded that Anderson, a 56 year-old former security guard with a 7th grade education, suffered a severe mental disorder. (Tr. 14). However, this condition was found to have only become disabling as of March 3, 1988. Prior to this date, the ALJ concluded that the plaintiff was capable of performing his past relevant work as a security guard. (Tr. 14). After a review of the evidence presented, the Court concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the summary judgment motion of the defendant and deny that of the plaintiff.

The administrative decision is supported by the information provided by vocational expert, Julie Morrissey. The expert testified that the plaintiff's past work as a security guard would be classified as light and unskilled. (Tr. 76). The ALJ proceeded to ask Morrissey if a person, such as the claimant, could perform the plaintiff's past work as a security guard, given such restrictions as one unable to lift over 25 pounds, with a lumbar spine problem causing mild limitation of spine motion and precluding repeated stooping and bending, a mild breathing impairment, a visual impairment which would be severe in the right eye but not in the left, blood pressure problems controlled through medication and no end organ damage, arthritis of the hands causing occasional stiffness and swelling, an inability to walk more than a quarter of mile at a time, an inability to stand or sit for more than 45 minutes at a time, and anxiety controlled through medication. (Tr. 77–79). The expert testified that such an individual could still perform the job of security guard. (Tr. 77–79). Thus, assuming that the information given to Morrissey fairly characterized Anderson during the relevant time period, then he was capable of performing his past relevant work and could not be found to have been disabled under the requirement of the Social Security Act.

1. Anderson previously applied for social security benefits on December 3, 1982 and was denied. He pursued his administrative remedies and was denied in a decision that became final for the administration on June 19, 1985. This decision was not reopened by the ALJ. Twrrefore, the decision of the administration as to the plaintiff's disability prior to June 19, 1985 is *Res Judicata.*

Anderson alleges disability due to such physical impairments as hypertension, shortness of breath, chest pain, and musculoskeletal problems. However, the record fails to reveal substantial evidence to support these claims during the relevant time period between June 19, 1985, the date upon which the plaintiff's previous unfavorable benefits decision became final, and March 3, 1988, the onset date selected by the Secretary. The record is devoid of any evidence that the plaintiff sought treatment from June of 1985 until May of 1986. Failure to seek treatment for a period of time may be relevant to the ultimate decision on disability. *Hale v. Secretary of Health and Human Services*, 816 F.2d 1078, 1081 (6th Cir.1987).

Anderson was seen for complaints of abdominal pain at the emergency room of the Methodist Hospital of Pikeville on May 31, 1986. The plaintiff underwent several laboratory tests which all produced negative results. (Tr. 245).

Anderson was seen by Dr. Mary Wiss twice in the next months. (Tr. 246). The doctor concluded that the plaintiff's complaints of pain were due to an incisional hernia and a repair of this hernia was carried out with the result that the claimant was relieved of all symptoms. (Tr. 246). She could find no evidence of circulatory problems, despite his complaints of leg pain. Wiss stated that his blood pressure never exceeded 140/90. (Tr. 247). While the claimant was described as "sort of weak and fainthearted," Wiss reported that she found no disabling condition present. (Tr. 247).

Dr. John Sutherland, Anderson's treating physician, was contacted by telephone for the administration on September 6, 1986. Sutherland reported that the plaintiff was being treated for a hiatal hernia, osteoarthritis of the spine, chronic obstructive pulmonary disease, hypertension, and an ulcer. (Tr. 241). The doctor reported that the ulcer and the hypertension were being controlled through medication and/or diet. (Tr. 241). These statements were repeated in a statement signed by the doctor in November.

Anderson was seen by Dr. Allan Halbert in September of 1986. A chest x-ray was reported as normal. (Tr. 251). Pulmonary function testing revealed only mild obstructive airway disease. (Tr. 253). A lumbar spine x-ray showed normal lordosis to the lumbar spine evidence of early arthritic changes. Range of motion in the extremities was normal, although there was some limitation of motion for the spine.

Anderson's medical records were evaluated by agency consultant, Dr. P. Saranga, in October of 1986. Apprised of the abnormalities found during Dr. Halbert's examination, the doctor concluded that the plaintiff's physical condition was less than severe. (Tr. 259). Thus, the record fails to indicate that Anderson suffered a physical impairment during the relevant time period that would have prevented him from performing his past relevant work as a security guard.

The Court notes that there is no medical evidence relating to the plaintiff's physical condition dated after 1986. From the sum total of this evidence, it appears that the hypothetical adequately took into account all of the plaintiff's physical limitations.

The Court now turns to the question of whether the ALJ's choice of March 3, 1988 as the onset of a totally disabling mental impairment was supported by substantial evidence. On this date, Anderson was examined for the administration by psychologist, Philip Backus. Backus reported that the plaintiff was moderately to severely depressed. (Tr. 288). While the claimant was said to be able to handle stresses in his environment, an attempt at gainful employment would cause a rapid deterioration in his condition. (Tr. 288). Backus went on to assess the plaintiff's ability to perform work related activities. The claimant was rated ability was rated poor to none in all categories. (Tr. 290–291). As a result of this report, the ALJ found that Anderson was totally disabled and eligible for SSI.

Anderson argues that the administration erred in not finding that his mental impairment was disabling prior to the expi-

ration of his insured status. The Court notes the administration only has to support the onset date it selected, March 3, 1988, with substantial evidence and does not have to refute evidence of another date that could have been selected. *Blankenship v. Secretary of Health and Human Services,* 874 F.2d 1116, 1121 (6th Cir.1989).

Anderson was reported as being anxious and depressed by Dr. Halbert in Halbert's September, 1986 medical report but there was no detailed information submitted to flesh out this statement. (Tr. 250). Dr. Sutherland, also reported that the plaintiff suffered anxiety in his September, 1986 telephone contact, but reported that the condition was medically controlled. (Tr. 242). In his November telephone contact with the administration, Sutherland reiterated that while the claimant was anxious, he was in good touch with reality. (Tr. 260). Thus, the physicians who treated Anderson during the relevant time period failed to detect a severe mental disorder.

Dr. Saranga, who evaluated Anderson's medical records in October of 1986, concluded that he suffered no medically determinable mental impairment. (Tr. 259). This conclusion was also reached by psychologist, Robert Jones, who evaluated the claimant's records in December of 1986. Thereafter, there is absolutely no reference to mental condition or any treatment for more than a year. Thus, the medical evidence from the relevant time period, does not support a claim that Anderson suffered an disabling mental impairment prior to the expiration of his insured status on December 31, 1986, or at anytime before March, 1988.[2]

After a review of the evidence presented, the Court concludes that the administrative decision denying Anderson social security benefits prior to March 3, 1988 is supported by substantial evidence. The medical evidence clearly does not indicate a disabling mental condition during the period prior to the expiration of insured status. The selection of March 3, 1988 as the date the claim-

ant's condition became totally disabling is supported by substantial evidence. Considering the record as a whole, the information given to Morrissey fairly depicted Anderson during the relevant time frame. Therefore, the Court must grant the summary judgment motion of the defendant and deny that of the plaintiff. A separate judgement and order will be entered simultaneously consistent with this opinion.

## ORDER

In accordance with the memorandum opinion entered this same date,

IT IS HEREBY ORDERED that:

(1) The defendants' motion for summary judgment be GRANTED;

(2) the plaintiff's motion for summary judgment be DENIED;

(3) the administrative decision be AFFIRMED;

(4) the case be DISMISSED and STRICKEN from the active docket of this Court.

---

**2.** There is no indication that the plaintiff suffered from a slowly progressive impairment like that found in *Blankenship, supra.*