911 F.2d 731
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bruce W. ANDERSON, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health & Human
Services, Defendant-Appellee.
 No. 89-6438.
 United States Court of Appeals, Sixth Circuit.
 Aug. 13, 1990.
 
 Before KENNEDY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Bruce W. Anderson appeals from the district court's judgment[1] which affirmed the Secretary of Health and Human Services' denial of Anderson's claim for a period of disability and disability insurance benefits under the Social Security Act as amended. For the following reasons we affirm the judgment of the district court.
 
 I.
 
 2
 Anderson filed his application for disability insurance benefits and supplemental security income on August 12, 1986, alleging that he became disabled and unable to work on March 3, 1981, due to lung disease, arthritis, poor vision, hypertension, back pain, gastrointestinal disease, mental illness, and a stroke.[2] The Secretary of Health and Human Services (Secretary) denied claimant's applications on October 29, 1986. The Secretary denied claimant's applications upon reconsideration on December 9, 1986. Dissatisfied with the Secretary's determinations, Anderson requested a hearing before an Administrative Law Judge (ALJ). This hearing was held on December 14, 1987.
 
 
 3
 On April 25, 1988, the ALJ issued his decision. The ALJ determined that: (1) Anderson retained the residual functional capacity to perform his former work (as a night watchman) prior to March 3, 1988; and (2) Anderson has been disabled since March 3, 1988. Consequently, the claimant's application for Supplemental Security Income was granted with an onset date of March 3, 1988. However, because the claimant had failed to prove disability prior to December 31, 1986 (the expiration date of Anderson's insured status), his claim for disability insurance benefits was denied. The ALJ's decision became the Secretary's final decision when the Appeals Council denied Anderson's request for review on September 23, 1988.
 
 
 4
 Anderson filed a civil action in the Eastern District of Kentucky, pursuant to 42 U.S.C. Secs. 405(g) and 1383(c)(3), seeking judicial review of the Secretary's decision. On September 18, 1989, the district court issued its Memorandum Opinion which affirmed the administrative decision and granted the Secretary's motion for summary judgment. Claimant thereafter filed this timely appeal.
 
 
 5
 The following evidence was introduced at the December 14, 1987 hearing.
 
 
 6
 Claimant was born on February 18, 1931, and was 55 years old when he applied for disability insurance benefits and supplemental security income on August 12, 1986. Anderson completed the seventh grade and thereafter worked, most recently as a night watchman. Claimant last worked in March, 1981, alleging disability beginning March 3, 1981, due to lung disease, arthritis, poor vision, hypertension, back pain, gastrointestinal disease, mental illness, and a stroke.
 
 
 7
 Dr. Bruce A. Guberman examined the claimant on March 5, 1983, pursuant to Anderson's complaints of stomach pain, lower back pain, and high blood pressure. Dr. Guberman noted that the claimant's "[r]ange of motion of all extremities is completely normal," adding that Anderson's "intellectual functioning and mental status are normal." Although the claimant's blood pressure was 140/100, Dr. Guberman noted that there was no evidence of end-organ disease. After diagnosing chronic obstructive pulmonary disease, degenerative joint disease, amblyopia of the right eye, and hypertension, Dr. Guberman concluded:
 
 
 8
 [Anderson] is obese and there is no evidence of weight loss or wasting. The patient has chest pains which are related to the esophageal reflux. These are not anginal in nature. The patient also reports a five-ten year history of shortness of breath. There is evidence of obstructive airway disease on physical examination. However, the patient is comfortable in the supine and sitting positions. There is no clinical evidence of congestive heart failure.... There is evidence of degenerative joint disease but there is no joint swelling or capsule thickening. The patient's gait is normal. There are no range of motion abnormalities in the lower back or any other joints. There is no evidence of nerve root compression as all deep tendon reflexes are brisk, and all sensory modalities are well-preserved.
 
 
 9
 Furthermore, x-rays requested by Dr. Guberman, and evaluated by Dr. Alex Poulos, revealed that the heart and vessels were within normal limits, the lung fields were clear, and the lumbar spine showed no evidence of fracture, dislocation, or other pathological bone or joint changes.
 
 
 10
 Dr. Syed Ikramuddin examined the claimant on July 8, 1983. Although noting that Anderson was "incapacitated at this time because of his hypertension," Dr. Ikramuddin concluded that claimant could perform "very light work." Furthermore, Dr. Ikramuddin's medical report, after incorrectly noting that Anderson was 62 years old, failed to discuss Anderson's hypertension-related symptoms whatsoever. In fact, Dr. Ikramuddin noted:
 
 
 11
 No loss of appetite. No loss of weight. Bowels have been regular. Micturition normal. Appetite has been good.
 
 
 12
 .............................................................
 
 
 13
 ...................
 
 
 14
 * * *
 
 
 15
 Patient well nourished.... Vision 20/20 with glasses. General condition fair. No lymphadenopathy. JVP normal. Heart sounds 1 and 2 normal. No murmers. Lungs clear to ausculation, no adventitious sounds. Thyroid normal. Heent normal. Blood pressure 140/90.... Abdominal exam soft, no masses felt. Has a lower right paramedial scar for appendectomy done many years ago quite satisfactorily. No weaknesses of the hernial sites. No abdominal bruit. Peripheral pulse is satisfactory. Neurological exam within normal limits. No motor weakness. No sensory loss. Lumbar spine--no tenderness elicited at this time. Movement satisfactory. Gallbladder sonogram normal. UGI series normal. Chest x-ray normal.
 
 
 16
 Dr. Ralph W. Hess examined the claimant on August 26, 1980, and again on May 2, 1983. At the latter examination, Anderson's blood pressure measured 142/82, his EKG was normal, and the claimant "voiced no complaints." Dr. Hess merely advised the claimant to continue his medication.
 
 
 17
 The claimant was examined by Dr. Bashir Ameji on September 20, 1983, and again on October 4, 1983. Though Dr. Ameji concluded that Anderson was not "in any gainful condition for employment," the doctor's report erroneously listed the claimant's age as 62, and noted that Anderson was "alert, conscious, well-oriented to place and time and [able to] answer all of [my] questions well." Furthermore, though Dr. Ameji reported that claimant "denies smoking," the doctor noted that "I will advise this patient to refrain from dusty atmosphere, [and to] stop smoking." Dr. Ameji reported that Anderson's pupils, throat, heart and abdomen all tested normal. Anderson's blood pressure was 140/100.
 
 
 18
 Dr. Mary Wiss reported that she successfully "repaired" Anderson's incisional hernia on June 6, 1986. Dr. Wiss further reported that the claimant had a history of hypertension, but that his blood pressure "has not been over 140/90, and at the time he had his hernia repair was 110/70." After noting that Anderson was "sort of weak and fainthearted," Dr. Wiss concluded that the claimant did not have any physical condition warranting a finding of disability.
 
 
 19
 On September 25, 1986, Anderson was given a consultative examination by Dr. Allan D. Halbert. Though the claimant complained of severe back pain, Anderson conceded that this pain was not associated with exertion. Anderson's blood pressure measured 150/82, and a chest x-ray was normal. Though an x-ray of the claimant's lumbar spine indicated early degenerative changes and questionable disc space narrowing, Anderson's range of motion was not significantly reduced. A pulmonary function study was consistent with mild obstructive airway disease. Though Dr. Halbert remarked that claimant had an "anxious and depressed type of personality," the doctor noted no functional limitations. Despite Anderson's claim that he thought he had had a stroke, Dr. Halbert noted that there were no neurological symptoms at the time of the examination. Though Dr. Halbert noted that the claimant's vision was 20/100 in the right eye, and 20/25 in the left eye, the doctor made no diagnosis of any visual impairment.
 
 
 20
 Dr. J.P. Sutherland served as Anderson's primary family physician during the time period now being adjudicated. In a brief letter dated June 17, 1983, Dr. Sutherland noted that the claimant was receiving treatment for bronchitis, emphysema, hypertension, hiatus hernia, gastritis, anxiety and obesity. When contacted by the Social Security Administration on September 6, 1986, Dr. Sutherland reported that claimant's ulcer, hypertension, chronic obstructive lung disease, high blood pressure, and arthritis were all controlled with medicine. Though Dr. Sutherland reported that the claimant had a "disposition to be anxious," the doctor noted that Anderson was "in good touch with reality." Dr. Sutherland attributed the claimant's anxiety to his financial and physical problems.
 
 
 21
 At the Secretary's request, Dr. Robert Jones, a clinical psychologist, evaluated all of the existing evidence of record as of December, 1986, the month that the claimant's insured status expired. Based upon the reports of Dr. Sutherland and Dr. Halbert, as well as the claimant's own description of his activities, Dr. Jones concluded that the claimant had no medically determinable mental impairment.
 
 
 22
 On March 3, 1988, Dr. Philip S. Backus, a psychiatrist, examined Anderson following the claimant's hearing before the ALJ. Dr. Backus concluded that, although Anderson was able to control his depression and anxiety in his current situation, the claimant would experience rapid deterioration if he were to attempt to engage in gainful employment:
 
 
 23
 Mr. Anderson is experiencing moderate to severe depression and anxiety with a concentration and attention span that fluctuates with the level of depression. Emotional upset can precipitate severe depression as well as organic factors, such as hypertension. He had no psychotic or bizarre behavior. In his present environment, he is able to control and minimize stresses so depression can be somewhat contained, but should he attempt gainful employment, he would lose control of stresses, he would deteriorate rapidly and probably require psychiatric hospitalization, but at least could not follow simple instructions or perform simple, repetitive tasks without constant supervision. He relates adequately to others, but in a mild, subdued manner in his present circumstances, but not at a place of employment. He has had a significant loss of general interests and a decrease in daily activities.
 
 
 24
 Though Anderson testified (before the ALJ) that he experiences constant chest and back pain, claimant nevertheless noted that he could walk approximately one-quarter of a mile, that he could stand for thirty to forty-five minutes, that he could sit for forty-five minutes, and that he could lift up to twenty-five pounds.
 
 
 25
 Julie Morrissey testified as a vocational expert at the hearing before the ALJ. Ms. Morrissey testified that Anderson's night watchman position involved a "light level of exertion" and was "unskilled." The ALJ then asked Ms. Morrissey to assume a hypothetical individual of the claimant's age, education, and work experience who suffered from the following ailments: a degenerative condition of the spine diagnosed as early degenerative or arthritic changes of the lumbar spine (precluding "arduous physical exertion and any activity requiring repeated stooping and bending"); mild chronic obstructive airway disease; amblyopia (visual impairment); hypertension; a nonrecurring "incisional hernia"; anxiety; "arthritis of the hands"; an inability to lift more than 25 pounds; an inability to walk more than one-quarter of a mile at a time; and an inability to sit, or stand, for more than 45 minutes at a time. The ALJ then asked Ms. Morrissey "whether these conditions, either singly or in combination, would be such as to preclude an individual from performing the type of work which [Anderson] has done in the past". Ms. Morrissey responded, "I don't believe they would preclude him from performing his past relevant work, Your Honor." When asked by the claimant's counsel to assume Anderson's credibility regarding his testimony relative to pain and discomfort, Ms. Morrissey testified that the claimant would still be capable of performing his past relevant work as a night watchman.
 
 
 26
 After considering the testimonial and documentary evidence, the ALJ held:
 
 
 27
 [T]he undersigned Administrative Law Judge finds that the claimant's impairments in combination do not constitute a condition that meets or equals any listed impairment.
 
 
 28
 The next step in the sequential evaluation requires a determination of the claimant's residual functional capacity.... I find the claimant capable of light-level work activity. From a functional standpoint, he would not be precluded from engaging in his past relevant work as a night watchman. Hypothetical questioning propounded to a vocational expert at the hearing substantiates that determination. However, evidence obtained subsequent to the hearing clearly demonstrates that the claimant is unable to engage in any substantial gainful activity on any level. It therefore follows that the claimant is disabled within the meaning of the Social Security Act.
 
 
 29
 Consideration must now be given to the ... date of the onset of the disability, particularly since the claimant was last insured under the Act on December 31, 1986, and disability is based on a mental impairment....
 
 
 30
 A psychiatric review conducted by psychologist Dr. R. Jones in December, 1986 resulted in a conclusion that there was no evidence of a medically determinable mental impairment. The record discloses no other evidence of a mental impairment prior to the consultative evaluation by Dr. Backus in March, 1988.
 
 
 31
 For lack of convincing evidence, I find that there is no proof of a severe mental impairment prior to March 3, 1988. Thus the claimant would not be eligible for Title II benefits, but is successful in his Title XVI claim with an onset date of disability designated to be March 3, 1988.
 
 
 32
 Anderson argues that the Secretary's finding that he had the residual functional capacity to perform his past relevant work prior to March 3, 1988, is not supported by substantial evidence. Specifically, Anderson argues that he suffers from lung disease, arthritis, poor vision, hypertension, back pain, gastrointestinal disease, mental illness, and a stroke which, together, could reasonably be expected to prevent any substantial gainful activity.
 
 II.
 A.
 
 33
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). When determining whether the Secretary's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole," Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and we " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If the Secretary's findings are supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983).
 
 
 34
 The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Sec. 423(d). If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied. 20 C.F.R. Secs. 404.1520(b), 416.920(b). If the claimant is not found to have an impairment which significantly limits his or her ability to work (a severe impairment), then he or she is not disabled. 20 C.F.R. Secs. 404.1520(c), 416.920(c).
 
 
 35
 If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments. 20 C.F.R. Secs. 404.1520(d), 416.920(d). See 20 C.F.R. Secs. 404.1525(a), 416.925(a). If so, benefits are owing without further inquiry. In the instant action, the ALJ found that Anderson did not suffer from one of the listed impairments. In such a case, assuming the individual had previously worked, the Secretary must next decide whether the claimant can return to the job he or she previously held. 20 C.F.R. Secs. 404.1520(e), 416.920(e). By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," the claimant establishes a prima facie case of disability. Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir.1978). In the instant action, the ALJ determined that Anderson was capable of returning to his particular occupation (night watchman).
 
 B.
 
 36
 Anderson argues that the ALJ erroneously concluded that there was insufficient evidence to support a debilitating impairment arising from the combined effects of claimant's medical and personality disorders beginning March 3, 1981. We reject this argument.
 
 
 37
 In order to establish entitlement to disability insurance benefits, an individual must establish that he became "disabled" prior to the expiration of his insured status. 42 U.S.C. Sec. 423(a) and (c); Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir.1988). The record reflects that the claimant's insured status expired on December 31, 1986. Anderson must therefore prove that he became disabled prior to December 31, 1986, in order to qualify for disability insurance benefits.
 
 
 38
 Though Anderson has met his burden of proving disability beginning March 3, 1988, the record fails to support the claimant's allegation that he became disabled prior to that date. In fact, the record contains substantial evidence to support the Secretary's determination that prior to March 3, 1988, the claimant retained the residual functional capacity to perform his past relevant work. Julie Morrissey, the vocational expert, testified that Anderson's night watchman position required "light" exertion. Light work involves lifting no more than twenty pounds at a time with more frequent lifting or carrying of less than ten pounds. Much walking or standing is often required, though prolonged sitting, with the occasional pushing and pulling of arm or leg controls, is included in this category. 20 C.F.R. Sec. 404.1567(b).
 
 
 39
 Though various doctors have confirmed Anderson's hypertension, ulcer, osteoarthritis of the spine, anxiety, hiatus hernia, and chronic obstructive lung disease, the record contains little incontrovertible objective evidence of an underlying condition that would cause severe work-related functional limitations. The ALJ specifically found that the objective medical evidence failed to confirm the severity of the pain that claimant alleged, and that Anderson's underlying condition could not reasonably be expected to produce disabling pain.
 
 
 40
 This court has previously held that subjective complaints of pain may support a claim for disability. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 852 (6th Cir.1986). However, subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability. 20 C.F.R. Sec. 404.1529. There must be objective medical evidence, in the record, of an underlying medical condition to support a disability claim. Duncan, 801 F.2d at 853. If this requirement is met, the court must also determine either that the objective medical evidence confirms the severity of the alleged disabling pain arising from the condition, or that the objectively established medical condition is of such a severity that it can reasonably be expected to produce disabling pain. Id. In applying this standard the reviewing court should show deference to the administrative law judge's credibility determinations. Gooch v. Secretary of Health & Human Servs., 833 F.2d 589, 592 (6th Cir.1987), cert. denied, 484 U.S. 1075 (1988).
 
 
 41
 Though Anderson testified to disabling arthritic and lower back pain, Drs. Wiss, Halbert and Sutherland all reported that claimant's ailments, and the accompanying pain, were controlled by medication. Anderson's complaints of disabling pain were properly rejected because the medical evidence failed to confirm the severity of the pain. Though Anderson alleged fully disabling and debilitating symptomatology, the ALJ may distrust a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict one another.
 
 
 42
 Anderson further alleges that he has suffered from a severe, and disabling, mental impairment since March 3, 1981. A claimant must satisfy the documentation requirements of 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.00(B) to establish that a mental disorder reaches the level of severity to be considered disabling: "The existence of a medically determinable impairment of the required duration must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory or psychological test findings." Id. Anderson has provided insufficient medical evidence to satisfy this mental disorder documentation requirement. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.00(D) (1989). Anderson's unsupported claims of a mental impairment beginning March 3, 1981, are insufficient to prove a significant functional limitation. Furthermore, this court has previously held that a mental impairment diagnosis is insufficient, standing alone, to establish entitlement to disability benefits. Foster v. Bowen, 853 F.2d 483, 489 (6th Cir.1988). An individual must establish that the condition is disabling. Id. Anderson has simply failed to establish a disabling mental impairment prior to March 3, 1988. In fact, Drs. Guberman, Ameji, Sutherland, and Jones all noted that the claimant was in good touch with reality, and that his anxiety was controlled by medication, prior to March 3, 1988.
 
 
 43
 Primarily relying on Dr. Backus' examination of the claimant in March, 1988, the Secretary determined that Anderson's mental impairment disabled the claimant beginning March 3, 1988. At the time Dr. Backus examined him, Anderson was experiencing moderate to severe depression. After examining the claimant, Dr. Backus, a psychiatrist, concluded that Anderson was unable to engage in substantial gainful activity due to a severe mental impairment. Dr. Backus, however, did not offer an opinion as to when the claimant's condition became disabling.
 
 
 44
 In Blankenship v. Bowen, 874 F.2d 1116 (6th Cir.1989), this court set forth the principles necessary to determine the onset date of disability in cases involving mental impairments. After noting the progressive nature of many mental disorders, this court held that the disability onset date must often be inferred from the medical evidence that describes the history and symptomatology of a claimant's disease. Id. at 1122. The Secretary is not required to present evidence which eliminates an earlier onset date, but must merely support the chosen onset date by substantial evidence. Id. at 1121.
 
 
 45
 The claimant in the instant action asserts that "the thread of a disabling mental impairment runs through the evidence" from 1983 through 1988. Drs. Guberman, Ameji, Sutherland, and Jones all noted, however, that the claimant was in good touch with reality and that his anxiety was controlled by medication. In fact, one month prior to the expiration of Anderson's insured status, Dr. Sutherland noted that "[t]he claimant is in good touch with reality [though he] does have some disposition to be anxious." Furthermore, Dr. Jones, a psychologist, reviewed the claimant's entire record in December, 1986 (the month that Anderson's insured status expired), and concluded that there was no evidence of a medically determinable mental impairment at that time. Because substantial evidence supports the Secretary's disability onset date determination, the claimant's arguments to the contrary must fail.
 
 
 46
 Anderson further maintains that the ALJ failed to consider his impairments in combination. This claim is without merit. The ALJ specifically stated that he considered all of the claimant's impairments in combination and concluded that these impairments did not prevent the claimant from performing his past relevant work as a night watchman. Such statements are sufficient to show that the ALJ considered the combined effect of the claimant's impairments. See Gooch, 833 F.2d at 591-92.
 
 
 47
 The ALJ considered Anderson's testimony, determined his credibility, and found the claimant able to perform his past relevant work. See Hardaway v. Secretary of Health & Human Servs., 823 F.2d 922, 928 (6th Cir.1987) (a reviewing court will not normally disturb the Secretary's credibility determinations). Because the ALJ's findings are supported by substantial evidence, the district court's judgment is AFFIRMED.
 
 
 
 [1]
 See Anderson v. Secretary of Health & Human Servs., 722 F.Supp. 1436 (E.D.Ky.1989)
 
 
 [2]
 Though Anderson's August 12, 1986 application to the Secretary actually listed "stroke" as claimant's only disabling condition, we will nevertheless consider all the diseases and illnesses currently alleged by the claimant